**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1756
_____

ALBION ENGINEERING CO, a New Jersey corporation,

Appellant

v.

HARTFORD FIRE INSURANCE CO, a Connecticut corporation

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil No. 1-17-cv-3569
District Judge: Honorable Noel L. Hillman
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 16, 2018

Before: GREENAWAY, JR., BIBAS, FUENTES, *Circuit Judges*.

(Filed: July 10, 2019)

_____

OPINION[**]
_____

FUENTES, *Circuit Judge*.

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Plaintiff-Appellant Albion Engineering held an insurance policy with Hartford Fire Insurance, which insured against any disparagement or defamation suit brought against Albion. A competitor sued Albion for false advertising and unfair competition. Hartford concluded that this competitor's suit was not covered by its policy and refused to defend Albion. Albion has sued Hartford here to enforce coverage. The question before the Court is whether the competitor's claims constitute "disparagement" or "defamation" such that Hartford has a duty to defend Albion. For the reasons stated below, we conclude they do not. We therefore will affirm the District Court's judgment in favor of Hartford.

## I.

Albion sells products such as caulking guns and dispensing accessories. It held a business liability insurance policy from Hartford with a policy period beginning May 1, 2005 through January 1, 2007.[1] Among other things, this policy stated that Hartford would "pay on behalf of [Albion] those sums that [Albion] becomes legally obligated to pay as damages because of . . . 'personal and advertising injury.'"[2] Hartford had "the . . . duty to defend [Albion] against any 'suit' seeking those damages."[3]

The policy further defined "personal and advertising [i]njury" to include "oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." A.A. 1187. The

---

[1] This constitutes two consecutive policy periods, from May 1, 2005 through January 1, 2006, and January 1, 2006 through January 1, 2007.
[2] A.A. 1169.
[3] *Id*.

policy further stated that it did not apply, *inter alia*, when the injury arises from (1) "oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity"; (2) a statement whose first publication took place before the beginning of the policy period; or (3) "the failure of goods, products or services to conform with any statement of quality or performance." A.A. 2443.

Albion's competitor Newborn believed Albion had claimed its products were made in the United States when they were really made in Taiwan. It sued Albion in the District of New Jersey, bringing two claims: (1) false advertising and product marking in violation of the Lanham Act, 15 U.S.C. § 1125(a); and (2) New Jersey tortious unfair competition through false statements and material omissions.

Albion notified Hartford of the Newborn suit. Hartford, concluding that the suit did not meet the terms of its policy, disclaimed coverage, forcing Albion to defend itself. After the close of discovery in the Newborn suit, Albion re-submitted its request to Hartford. It also submitted certain pieces of extrinsic evidence to Hartford that had come to light in the course of discovery.

Shortly thereafter, Albion filed this lawsuit. After receiving competing motions for summary judgment, the District Court entered judgment for Hartford, finding that Albion's policy did not cover the Newborn suit. This appeal followed.[4]

---

[4] Albion is a New Jersey corporation, and Hartford is a Connecticut corporation, and the amount in controversy exceeds $75,000. The District Court had diversity jurisdiction under 28 U.S.C. § 1332. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## II.

The parties agree that New Jersey law applies to this case. This Court reviews interpretations of insurance policy coverage *de novo*.[5]

For the suit to fall within the policy's coverage, Albion must demonstrate Newborn brings a claim that Albion (1) made an electronic, oral, written, or other publication of material that (2) slanders or libels Newborn or disparages Newborn's goods, products, or services.[6]

If Albion can show that Newborn made a claim of this character, then, under the terms of the policy, Hartford has a duty to defend Albion in the Newborn suit. "Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy. When the two correspond, the duty to defend arises, irrespective of the claim's actual merit."[7] "That the claims are poorly developed and almost sure to fail is irrelevant to the insurance company's initial duty to defend."[8]

If a complaint's claims are ambiguous, the Court resolves doubts in favor of the insured and thus in favor of coverage.[9] That "align[s] with the expectations of insureds, who 'expect their coverage and defense benefits to be determined by the nature of the claim against them, not by the fortuity of how the plaintiff, a third party, chooses to phrase the

---

[5] *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 595 (3d Cir. 2009).

[6] Albion must also show that this occurred during the applicable coverage period—May 1, 2005 to January 1, 2007—and that no policy exceptions apply.

[7] *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992).

[8] *Id.*

[9] *Abuzaid v. Mansard Gardens Assocs., LLC*, 23 A.3d 338, 346-47 (N.J. 2011).

complaint against the insured.'"[10]  When assessing whether a particular claim is covered, New Jersey courts are "not necessarily limited to the facts asserted in the complaint" since "an insurer's duty . . . may also be triggered by 'facts . . . that arise during the resolution of the underlying dispute.'"[11]  However, "the insurer has no duty to investigate possible ramifications of the underlying suit that could trigger coverage."[12]

Under New Jersey law, elements of a trade libel or product disparagement claim are (1) publication; (2) with malice; (3) of false allegations concerning another's property, product, or business; and (4) special—i.e., pecuniary—damages.[13]  New Jersey defamation law requires a similar showing: "(1) assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher."[14]  Both claims, in other words, require publication of a false statement concerning another.

Neither of Newborn's claims meets those requirements.  For its Lanham Act claim, Newborn alleged that Albion made "false statements of facts, misrepresentations, and material omissions of facts of the geographic origin of the subject merchandise and the commercial activity of Albion in violation of . . . the Lanham Act."[15]  Newborn made

---

[10] *Id.* at 347 (quoting *SL Indus., Inc. v. Am. Motorists Ins. Co.,* 607 A.2d 1266, 1272 (N.J. 1992)).

[11] *Id.* (quoting *SL Indus.*, 607 A.2d at 1272).

[12] *SL Indus., Inc.*, 607 A.2d at 1272.

[13] *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 238 (N.J. 1986); *System Operations Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1140 (3d. Cir. 1977).

[14] *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004).

[15] A.A. 318.

materially similar allegations for its claim of unfair competition.[16]  The gravamen of Newborn's suit, in other words, is that Albion lied about *Albion's* products, not Newborn's. Newborn never claims that Albion published false statements about Newborn's products. Newborn's suit therefore does not meet the requirements for coverage under the Hartford policy.

Albion protests this conclusion, making two arguments: (1) that extrinsic evidence shows that Newborn's complaint nevertheless sounds in defamation or disparagement; and (2) that Newborn's complaint alleges that Albion "implicitly" defamed Newborn. Both arguments are unavailing.

New Jersey permits courts to consider extrinsic evidence,[17] but such evidence does not help Albion here.  As the New Jersey Supreme Court has stated, extrinsic evidence can be helpful when confusion arises as to the "'nature of the claim against [the insured].'"[18] Albion cites two sets of extrinsic evidence; the first is a group of court documents submitted by Newborn in the course of its litigation, and the second is a collection of emails uncovered in discovery.  The extrinsic evidence is comprised of court filings and attached documents, as well as some discovery material comprised of internal emails of Albion executives.[19]

---

[16] A.A. 324.

[17] *See Abouzaid*, 23 A.3d at 347.

[18] *Id.* (quoting *SL Indus.*, 607 A.2d at 1272).

[19] The documents are, specifically: (1) the Newborn case's Joint Pretrial Order; (2) Newborn's Motion for Summary Judgment and Statement of Facts; (3) Newborn's Memorandum in Opposition to Albion's Motion for Leave to Amend its Answer, a

But Albion does not show how the extrinsic evidence changes the nature of Newborn's claims, which remain focused on allegedly false statements Albion makes about its own products. Albion does not show how this extrinsic evidence forms the basis for Newborn's allegations,[20] or more broadly how the evidence constitutes the publication of false statements about Newborn.[21]

"[I]t is the allegation in the complaint of a cause of action" that triggers a duty to defend.[22] As New Jersey courts have stated, "our analysis does not permit nor does it require that we make a better case or a broader claim than those which might fairly be said to arise from the evidence."[23] "To do so . . . would create a nearly unlimited duty to defend and would unfairly require insurers to advance a defense based upon remote possibilities

---

document that includes several attached exhibits; and (4) several emails from an Albion executive.

[20] Albion points to a few instances in which Newborn uses the words like "disparage" in its court filings, but, as the District Court notes, these are all conclusory statements with no factual references and an unclear meaning for Newborn at best. They do not indicate that Newborn is pleading a disparagement claim and are insufficient to implicate a duty to defend. *See Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 561 (3d Cir. 2008) ("[T]he District Court correctly concluded that State Farm did not violate the Policy by refusing to defend irrespective of Appellant's conclusory allegations . . . ."); *see also SL Indus.*, 607 A.2d at 1272 ("[T]he duty to defend is triggered by facts indicating a potential for coverage . . . ."). Albion also points to several instances in which Newborn used variations of "false claim," although it points to no such instance where that language was used to refer to a claim about Newborn's products.

[21] Albion mistakenly argues that the District Court "engaged in improper fact finding" and "assess[ed] the merits of the underlying claims." Appellant Br. 17-18. This is not correct. The District Court merely pointed to the obvious fact that no claim could be made on the facts Albion presented. Albion argues that all elements of a claim need not be pled to trigger coverage but cites no New Jersey case supporting that proposition. Similarly, Albion argues that California law allows courts to infer certain material conversations took place, but we are not applying California law here.

[22] *Voorhees*, 607 A.2d at 1259.

[23] *FileNet Corp. v. Chubb Corp.*, 735 A.2d 1203, 1210 (N.J. Super. Ct. 1997).

7

bordering on speculation."[24] Newborn "significantly, has not attempted to" amend its complaint to add any claim for disparagement or defamation in light of the additional evidence.[25]

Even in light of the extrinsic evidence, a factfinder could not reasonably interpret Newborn's claims as being about anything other than Albion's statements about its products.[26] This is not a situation where extrinsic evidence or statements during litigation clarify an ambiguous legal cause of action or a poorly worded complaint. Forcing Hartford to defend Albion because of discovery materials unrelated to Newborn's claims would be akin to forcing Hartford to defend a reckless driving suit because disparaging documents were in the back seat.

Albion argues that, in any event, Albion's statements about its own products "implicitly" defame Newborn, and thus give rise to a duty to defend.[27] Under this theory, Albion disparaged Newborn by making false statements about Albion's own products.

New Jersey law, however, does not recognize a claim for implicit disparagement or defamation. To plead disparagement or defamation, a plaintiff must allege the defendant

---

[24] *Id.*

[25] *Id.* at 1209.

[26] Albion cites a host of non-New Jersey cases to support its arguments. But we must apply New Jersey law, and so these cases are not helpful to Albion. The Court need not belabor itself discussing legal propositions New Jersey courts have never accepted.

[27] *See* Appellant Br. at 1 (identifying issues on appeal as "[w]hether the District Court improperly ignored fact allegations evidencing implicit disparagement and defamation" and "[w]hether . . . extrinsic evidence . . . revealed the potential for . . . the Complaint to allege implicit disparagement and defamation"). *See also id.* at 18 ("Implicit disparagement and defamation are implicated[.]")

published false statements about the plaintiff's product.[28]  Albion points to no New Jersey case that suggests otherwise.

Albion urges the Court to adopt California law instead, on the theory that New Jersey would follow California in modifying its law to accept theories of implicit defamation and disparagement.[29]  But New Jersey courts themselves have the privilege of upending or overturning their legal precedents.  We do not predict what New Jersey's law will be, we merely apply what it is.  And in New Jersey, a plaintiff can only make out a disparagement or defamation claim by alleging the publication of a false statement about another.[30]  Albion has not shown that such is the case here.

Because Albion has not shown that Newborn's claims constitute disparagement or defamation claims as New Jersey law requires, Hartford has no duty to defend Albion in the suit.

---

[28] *See Dairy Stores*, 516 A.2d at 238; *DeAngelis*, 847 A.2d at 1267-68.

[29] Albion also moves the Court to take judicial notice of a brief filed in *Safety Dynamics, Inc. v. General Star Indem. Co.*, 475 Fed. App'x 213 (9th Cir. 2012). Mot. for Judicial Notice July 13, 2018.  This motion will be denied.  To the extent Albion seeks judicial notice of the fact a brief was filed in another case, it is irrelevant to the issue before us.  To the extent Albion asks us to take notice of the arguments contained therein, it is inappropriate.  *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[W]e may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion . . . .").

[30] *Dairy Stores*, 516 A.2d at 238; *DeAngelis*, 847 A.2d at 1267-68.

## III.

For the foregoing reasons, we will affirm the District Court's order granting judgment in favor of Hartford.